AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

JAN 1 6 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. **19MJ0194**
One (1) LG K30 Cellphone SN 19514186186, IMEI )
353855091711713 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952, 960 | Conspiracy to Import Controlled Substances |

The application is based on these facts:
See Attached Affidavit of Special Agent Joseph S. Cuttitta incorporated herein by reference

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*
Joseph S. Cuttitta, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/16/19

_____
*Judge's signature*

City and state: San Diego, Califonria         Hon. Linda Lopez, U.S. Magistrate Judge
*Printed name and title*



# AFFIDAVIT

I, Special Agent Joseph S. Cuttitta Jr., being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following:

   a. LG K30 Cellphone SN 19514186186, IMEI 353855091711713 ("**Target Device**")

as described in Attachments A and B, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952 and 960 – Importation of Controlled Substances. This search supports an investigation and prosecution of Gwendolyn MCGAUGH ("Defendant") for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was seized on August 21, 2018 at the Tecate Port of Entry in San Diego, CA. The **Target Device** was seized from Gwendolyn MCGAUGH pursuant to her arrest for importation of federally controlled substances in violation of Title 21, United States Code, Sections 952, 960. The **Target Device** is currently stored as evidence at Evidence room 1, DSAC San Ysidro 2255 Niels Bohr Court, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been employed by HSI since 2005. Prior to that I was a Special Agent with ICE since 2002. Prior to that I was a Special Agent with Immigration and Naturalization Service since 1996. My duties include investigating the trafficking of illicit controlled substances and the importation and distribution of illegal substances. I am a graduate of the Immigration Officer Academy Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. I have received training in conducting narcotics smuggling investigations and the enforcement of numerous customs and immigration laws within the United States. The 20-week academy curriculum covers specialized training in criminal law, the Immigration and Naturalization Act, Title 21 United States Code, and statutory authority. My training has also included the use of cellular and digital telephones and other electronic devices by narcotics smugglers in the course of their illicit activities.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Drug smugglers will use cellular/mobile telephones to notify or warn their

    accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

 f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

 g. The use of cellular telephones by drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

 8. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

 9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

 a. tending to identify attempts to import heroin, fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States;

3

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of heroin, fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States;

  c. tending to identify co-conspirators, criminal associates, or others involved in the importation of heroin, fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States;

  d. tending to identify travel to or presence at locations involved in the importation of heroin, fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

  e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On August 21, 2018, at approximately 0555 hours, GWENDOLYN MCGAUGH, a citizen and national of the United States, applied for entry into the United States from Mexico at the Tecate Port of Entry. MCGAUGH was the registered owner, driver, and sole occupant of a Chevrolet Truck bearing California plates. The Customs and Border Protection Officer (CBPO) received a computer-generated alert to the driver MCGAUGH. The CBPO obtained a negative U.S. Customs declaration. MCGAUGH stated she was going to El Cajon, Ca. The CBPO referred the vehicle and MCGAUGH to the vehicle secondary lot for further inspection due to the computer-generated alert.

11. On August 21, 2018, at approximately 0556 hours, a CBPO assigned to the Tecate Port of Entry conducted a secondary inspection of a Black Chevy Avalanche driven by GWENDOLYN MCGAUGH. The CBPO received two negative customs declarations. The CBPO then had MCGAUGH exit the vehicle. The CBPO opened the hood and inspected the engine compartment. The CBPO then pulled off the air hose into the manifold

4

and used his screwdriver to penetrate the butterfly valve into the engine's manifold. The CBPO observed a non-factory metal box within the manifold.

12. The CBPO alerted a Canine Enforcement Officer (CEO) to screen the vehicle. The CEO notified the secondary officer of a positive alert. MCGAUGH was then escorted to the security office. A contract mechanic was then called to open the manifold on the vehicle's engine. In total nine packages were removed from the compartment and field tested. Five packages contained a substance which field tested positive for the properties of fentanyl, three packages which field tested positive for the properties of heroin, and one package which field tested positive for the properties of methamphetamine. In total, 6.44 kilograms (14.2 pounds) of fentanyl, 3.36 kilograms (7.41 pounds) of heroin and .50 kilograms (1.1 pounds) of methamphetamine were removed from the vehicle.

13. Post Miranda, MCGAUGH admitted knowledge of the narcotics in the vehicle and that she was to be paid $2000.00. MCGAUGH admitted she had successfully crossed narcotics into the United States from Mexico on five prior occasions commencing in April 2018. MCGAUGH stated she was to drive to Tj-Max in Fontana, California where she was to meet an unknown man. MCGAUGH stated she had met with two different unknown men in Fontana on multiple occasions. At the conclusion of the interview, MCGAUGH gave written and verbal consent to search the **Target Device**.[1]

14. MCGAUGH was arrested and charged with violation(s) of Title 21 §§ U.S.C. 952, 960, Unlawful Importation of a Controlled Substance.

15. The **Target Device** was seized by Customs and Border Protection at the time of MCGAUGH's arrest and placed into an evidence bag with the rest of her personal property. Homeland Security Investigations then assumed custody of the **Target Device**.

16. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that MCGAUGH likely used the **Target Device** to coordinate the importation of federally controlled substances into the United

---

[1] The United States still believes that MCGAUGH's consent is valid to conduct a search of the phone. However, in the abundance of caution, the United States is seeking this warrant based upon a finding of probable cause.

States. In addition, I have learned that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of MCGAUGH , such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**.

17. Finally, I also have learned that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional training, education and experience, I have learned that this requires planning and coordination in the days, weeks, and often months prior to the event. Given this, I request permission to search the **Target Device** for items listed in Attachment B beginning on April 1, 2018 through August 30, 2018.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones

6

do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that Gwendolyn MCGAUGH used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

22. Because the **Target Device** was promptly seized during the investigation of Gwendolyn MCGAUGH's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by Gwendolyn MCGAUGH continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from April 1, 2018 through August 30, 2018.

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Joseph S. Cuttitta Jr.
HSI Special Agent

Subscribed and sworn to before me this 16th Day of January 2019.

_____
Hon. Linda Lopez
United States Magistrate Judge

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Phone type: LG K30 Cellphone
    Model: K30
    IMEI: 353855091711713
    S/N: 19514186186
    (**Target Device**)

The **Target Device** is currently stored at DSAC San Ysidro 2255 Niels Bohr Court, San Diego, California 92154.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data for the period of April 1, 2018 through August 30, 2018.

a. tending to identify attempts to import heroin, fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of heroin, fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of heroin, fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of heroin, fentanyl and methamphetamine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, §§ 952 and 960.